**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MICHAEL DAVIS,

        Plaintiff,

    v.

JOSEPH VECCHIO, MICHAEL
DONNELLY, and CITY OF CHICAGO,

        Defendants.

Case No. 26-cv-7018

*Jury trial demanded.*

**COMPLAINT AT LAW**

NOW COMES Plaintiff MICHAEL DAVIS, by his attorney, LAW OFFICE OF JORDAN MARSH LLC, and complaining of the Defendants JOSEPH VECCHIO, MICHAEL DONNELLY, and CITY OF CHICAGO, and states the following:

**JURISDICTION AND VENUE**

1. This action arises under the Constitution of the United States, particularly the Fourth Amendment to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the laws of the State of Illinois.

2. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

1

3. This Court has jurisdiction over this action pursuant to Title 28 of the United States Code §§ 1331 and 1367, as Plaintiff asserts claims under federal law and the state law claims arise out of the same facts as the Federal claims. Venue is proper under Title 28 of the United States Code, § 1391(b)(2), as the events complained of occurred within this district.

## PARTIES

4. At all times relevant herein, Plaintiff MICHAEL DAVIS ("Michael") was a resident of the County of Cook, State of Illinois.

5. Defendants JOSEPH VECCHIO and MICHAEL DONNELLY, are sued in their individual capacities and were at all times relevant, sworn police officers employed by Defendant CITY OF CHICAGO, and were acting within the scope of their agency, service and/or employment with the CITY OF CHICAGO, and were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

6. Defendant, CITY OF CHICAGO is a government entity operating within the State of Illinois. The CITY OF CHICAGO is responsible for the actions of its employees while acting within the scope of their employment. At all times relevant to this action, CITY OF CHICAGO was the employer of Defendants VECCHIO and DONNELLY.

## FACTUAL ALLEGATIONS

7. On May 11, 2024, at approximately 6:22 p.m., Plaintiff Michael Davis was the sole occupant of his father's vehicle, parked at or near 111 E. Superior Street, in Chicago.

8. At the same time, Defendant Vecchio was the passenger of a Chicago Police Department ("CPD") vehicle that was traveling on Superior Street.

9. The CPD vehicle stopped parallel to Michael's father's vehicle.

10. Vecchio exited the CPD vehicle and approached the driver's side of Michael's father's vehicle.

11. Michael rolled down the driver's side window of his father's vehicle.

12. Vecchio identified himself as a Chicago police officer and told Michael that he was in a tow zone.

13. Vecchio then requested a driver's license from Michael.

14. Vecchio asked Michael if the vehicle belonged to him and if there was insurance on it, to which Michael responded that it was his father's car.

15. Michael proceeded to retrieve and hand Vecchio his driver's license and the vehicle insurance card.

16. Before looking at the insurance card, Vecchio asked Michael to roll down the back windows, and Michael complied.

17. Vecchio looked into the back seat of the vehicle.

18. Vecchio looked at the insurance card, said "Alright, these are good," and handed the card back to Michael.

19. Vecchio then said, "Just one second," and returned to his CPD vehicle with Michael's driver's license.

20. Vecchio returned and said, "It's valid" to Donnelly.

21. Without reasonable suspicion that Michael had committed or was committing any crime, Vecchio asked Michael, "You wanna pop out real quick, man?"

22. Michael complied and exited the vehicle.

23. After Michael exited the vehicle, Donelly began to search the vehicle.

24. Donnelly searched the glove compartment, a bag, the center console, the area under the driver's seat, and the passenger area.

25. Donnelly exited the vehicle and asked Michael, "Do you have anything in the glovebox?"

26. Michael responded, "No, it's my dad's car."

27. Donnelly then asked Michael for the key fob, and Michael responded that it was in the car.

28. Donelly returned to the vehicle and tried to open the locked glove compartment, rechecked the center console, and the rear seat area.

29. Donnelly exited the vehicle again and told Vecchio that the glovebox was locked.

30. Vecchio eventually went to search the vehicle himself, used his own set of "valet keys," and opened the glove compartment where he located a firearm that belonged to Michael's father.

31. Michael did not know there was a gun inside his father's vehicle.

32. Vecchio placed Michael in handcuffs.

33. While being handcuffed, Michael asked officers what he had done and asked if he could call his father.

34. While handcuffed and on the ground, Michael repeatedly requested that the Defendants contact his father.

35. Defendants recovered multiple firearms from the glovebox that Michael was unaware were located inside.

36. Michael was transported to the 18th District police station.

37. Michael was thereafter charged with Armed Habitual Criminal (Class X) under 720 ILCS 5/24-1.7-A, and a municipal parking citation under Chicago Ordinance 9-64-150(B), and Case No. 24CR-0677201 was opened in Cook County.

38. In subsequent reports, the Defendant Officers claimed that they "observed the driver and sole occupant of the vehicle now known as (Michael Davis) lean to his right side towards the glove compartment and appear to place an object making A/O's believe the subject was trying to conceal contraband."

39. This was false.

40. On 06/03/2025, the Cook County State's Attorney's Office dismissed the case against Michael via *Nolle Prosequi*.

41. As a result of the officers' unlawful conduct and false reports, Michael was forced to obtain and pay defense counsel, endure months of fear and anxiety, and face the threat of felony prosecution and years in prison.

42. As a result of the foregoing, Michael Davis was deprived of rights secured by the Fourth Amendment to the United States Constitution.

43. Defendant Officers' unlawful conduct was directly and proximately caused in whole or in part by one or more interrelated *de facto* policies, practices, and/or customs of the Chicago Police Department and City of Chicago, and the City of Chicago was aware of and deliberately indifferent to those constitutionally infirm policies.

## DEFENDANT OFFICERS' HISTORY OF MISCONDUCT

44. Since this incident, Defendants Vecchio and Donnelly have been relieved of their police powers due to multiple investigations into serious allegations of police misconduct.

45. Defendants Vecchio and Donnelly already have extensive histories of sustained allegations of misconduct.

5

46. Defendant Officers were all members of the 1863 tactical team, which has been the subject of numerous investigations by the Civilian Office of Police Accountability ("COPA").

47. In December 2024, COPA identified patterns of concern involving Defendant Officers and the 1863 tactical team. These included "unprofessional and disrespectful conduct towards civilians, including the use of profanities, insults, and threats of force"; "the use of pretextual traffic stops for reasons such as stopping too far away from the curb, stopping in a non-parking zone, and seatbelt violations,"; and "a consistent failure to adhere to CPD policies regarding the documentation and recording of civilian/police encounters, including failing to complete ISRs and TSSS cards, failing to provide ISR receipts, and late BWC activations."

48. In October 2025, COPA issued memoranda regarding Vecchio, recommending that Vecchio be relieved of his police powers pending the resolution of COPA's investigations.

49. COPA noted that despite having only six years of experience as a police officer, Vecchio has been named as an accused in at least 76 different complaints (also known as log numbers).

50. In fact, according to COPA, Vecchio has the highest number of log investigations in the entire Chicago Police Department.

51. COPA further noted that Donnelly has the fifth-highest number of complaints (42 log numbers).

52. The average Chicago Police Department member has 3.5 log numbers.

53. The majority of the complaints and investigations involve allegations of unjustified traffic stops, arrests, searches, and disrespectful or unprofessional conduct.

54. Additionally, COPA is investigating cases in which Vecchio allegedly provided false statements and/or testimony. Both incidents involved traffic stops during which Vecchio recovered a firearm during a vehicle search.

## LAWSUITS AGAINST DEFENDANT OFFICERS

55. Defendant Officers are no strangers to being accused of unlawful conduct similar to the conduct described in this complaint.

56. In *Wilson v. Vecchio* (24-cv-12371), Defendant Vecchio was accused of approaching the plaintiff's stopped car for a minor parking violation, unlawfully searching the plaintiff's vehicle, unlawfully detaining the plaintiff, using excessive force against the plaintiff, and denying the plaintiff equal protection.

57. The City settled *Wilson* for $80,000.

58. In *Northington v. Tohatan* (24-cv-11466), Defendant Vecchio, along with other officers from 1863, was accused of approaching the plaintiff's stopped car for a minor parking violation, pulling him out of his car, handcuffing and detaining him, searching his car, mocking and insulting, and threatening him before walking away and authoring a falsified stop report.

59. The City settled *Northington* for $80,000.

60. In *Ipaye v. City of Chicago et al.* (24-cv-8958), Defendant Vecchio was accused of searching the plaintiff's vehicle and person without consent or probable cause.

61. The City settled *Ipaye* for $80,000.

62. In *Quinn v. Vecchio et al.* (25-cv-10782), Defendant Vecchio is accused of searching the plaintiff's vehicle without consent or probable cause, leading to the plaintiff's false arrest. Vecchio is accused of falsifying reports and offering perjured testimony regarding the stop.

63. The *Quinn* lawsuit remains pending.

64. In *Garcia v. Vecchio et al.* (25-cv-13109), Defendant Vecchio is accused of unlawfully searching the plaintiff without reasonable suspicion or probable cause.

65. The *Garcia* lawsuit remains pending.

66. The cases cited above are just the tip of the iceberg when it comes to lawsuits against Chicago police, and specifically the 1863 tactical unit, for unlawful stops and searches.

67. The City has paid millions of dollars in settlements of lawsuits alleging unlawful traffic and investigatory stops and illegal searches.

## DEFENDANT VECCHIO'S DISCPLINARY HISTORY

68. Defendant Vecchio has been disciplined for similar conduct in the past.

69. COPA sustained numerous allegations against Vecchio, including a domestic incident that resulted in a 15-day suspension, and two cases involving reporting/documentation violations that resulted in a 2-day suspension and a reprimand.

70. Further, Vecchio's closed log number investigations reveal preliminary findings of misconduct in more than half of his cases.

## PRAYER FOR RELIEF

For the foregoing reasons, the Plaintiff MICHAEL DAVIS, prays for judgment against in a fair and reasonable amount, including compensatory and punitive damages, attorney fees and costs, pre-judgment interest, and for any additional relief this Court deems just and proper.

## JURY DEMAND

The Plaintiff MICHAEL DAVIS, requests a trial by jury.

**DATED:** June 15, 2026

Respectfully submitted,

MICHAEL DAVIS

/s/ Jordan Marsh

*Attorney for the Plaintiff*

**LAW OFFICE OF JORDAN MARSH LLC**
33 North LaSalle Street Suite 2000
Chicago, IL 60602
(224) 220-9000
jordan@jmarshlaw.com